# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN E. TAYLOR, JR., #R-66376, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 11-cv-104-JPG |
| | ) |
| LISA GAYLE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT District Judge:**

Plaintiff, an inmate currently in the Stateville Correctional Center, was at all times relevant to this action housed in the Menard Correctional Center. Plaintiff brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Upon careful review of the complaint and any supporting exhibits, the Court finds that some of the claims in the complaint may be dismissed at this point in the litigation.

**Facts:**

The following version of the facts of this case is gleaned from Plaintiff's complaint (Doc. 1). On February 26, 2009, Plaintiff entered protective custody at Menard. However, Plaintiff's medications remained stored with the rest of his personal property. Plaintiff saw Defendant Gayle passing out medications, and asked her to retrieve his medication. Defendant Gayle said she would bring Plaintiff his medications, but never did.

The next morning, Plaintiff informed Defendant Monroe that he needed his medication, and that no one had yet retrieved it for him. Plaintiff asked Defendant Monroe to retrieve the medication, but Defendant Monroe refused. On the same date Plaintiff was screened by Defendant Butler to determine whether he could remain in protective custody permanently. At this time Plaintiff made Defendant Butler aware that he was not receiving his medication. While Defendant Butler told Plaintiff that he would receive his medication, she did nothing further to ensure that this happened. Plaintiff then wrote to Defendant Brown, informing him that Plaintiff was not receiving his medications. Plaintiff also made Defendant Feinerman aware of the deprivation. Defendants Brown and Feinerman failed to respond, and did not take corrective actions. In total, Plaintiff was without his medication, which he was to take twice a day, Thursday evening, Friday, Saturday, Sunday, and

Monday morning.

On March 31, 2009, Plaintiff went to see Defendant Feinerman relating to an unspecified ailment. A nurse took Plaintiff's vitals, and informed him that his blood pressure was elevated at 160. The nurse made Defendant Feinerman aware of the elevated blood pressure, but Defendant Feinerman did nothing to treat the condition.

On May 12, 2009, Plaintiff spoke to Defendant Brown, informing him of threats he had received from Defendant Fry, who was Plaintiff's cellmate. Plaintiff asked to be moved to a new cell, but Defendant Brown refused this request. That evening Plaintiff was assaulted by Defendant Fry.

At some unspecified date, Plaintiff complained to Defendant Monroe and Defendant Brown that he did not have access to a restroom during recreation period. Plaintiff asked to be allowed back in to the cell house to use the restroom, but Defendant Monroe denied this request. Plaintiff asked Defendant Brown to rectify the situation, but Defendant Brown took no further action.

**Discussion:**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of FED. R. CIV. P. 8(e) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1: Medical Indifference**

Plaintiff alleges that Defendants Gayle, Monroe, Butler, and Feinerman were deliberately

indifferent to his medical needs when they refused to provide him with his medications, which were in storage with the rest of his personal property. Defendant Feinerman was further indifferent when he failed to treat Plaintiff for his elevated blood pressure. The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the

4

denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"). The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (Courts will not take sides in disagreements with medical personnel's judgments or techniques.) However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (*discussing Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)).

Plaintiff alleges in his complaint that he made Defendants Gayle, Monroe, and Butler aware of his need for his medication, and that without it he would suffer pain and loss of sleep. Plaintiff further alleges that he did in fact suffer these effects as a result of the denial of his medications. Plaintiff also alleges that a nurse made Defendant Feinerman aware of Plaintiff's elevated blood pressure, but that he did not provide treatment. Each of these Defendants was aware of a condition that had the potential to cause harm to Plaintiff, and was asked to remedy the situation. In each case, Plaintiff was denied treatment, either by a verbal denial or a failure to act, in spite of a risk of harm. Plaintiff has shown that he had serious health issues, both in terms of the pain and sleep deprivation caused by the denial of his medication, and his elevated blood pressure. However, it is unclear at this point whether Defendants Gayle, Monroe, Butler, and Feinerman failed to act so as to put Plaintiff at substantial risk of harm. For this reason, this claim cannot be dismissed at this time.

**Count 2:    Failure to Act**

Plaintiff next alleges that he made Defendants Feinerman and Brown aware that he was being denied his medications by Defendants Gayle, Monroe, and Butler, but that Defendants Feinerman and Brown failed to remedy the situation. Plaintiff seems to think that any prison employee who knows (or should know) about his problems has a duty to fix those problems. That theory is in direct conflict with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). As Chief Judge Easterbrook has stated:

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to [results]. That can't be right. *See Durmer v. O'Carroll*, 991 F.2d 64 (3rd Cir. 1993).

*Burks*, 555 F.3d at 595.

Plaintiff claims that he made Defendants Brown and Feinerman aware that he was not receiving his medication, and that Defendants Gayle, Monroe, and Butler were to blame. However,

6

Plaintiff does not allege that Defendants Brown and Feinerman were themselves responsible for the deprivation. Because defendants are responsible only for their own misdeeds, and because Plaintiff has alleged that it was Defendants Gayle, Monroe, and Butler who committed the violations, this count against Defendants Brown and Feinerman is dismissed with prejudice for failure to state a claim upon which relief may be granted.

**Count 3: Failure to Protect**

Plaintiff next claims that Defendant Brown failed to protect him from his cellmate, Defendant Fry, even though Plaintiff made Defendant Brown aware of a risk of assault. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the correctional officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, F.3d at 889 (*discussing Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Plaintiff alleges that he informed Defendant Brown multiple times that should he remain in the same cell with Defendant Fry, he ran a risk of being assaulted. This risk in fact came to life on the evening of May 12, 2009, when Plaintiff was assaulted by Defendant Fry. Because Plaintiff made Defendant Brown aware of a specific threat to his safety, and because Defendant Brown failed to take action to prevent the threat, this count cannot be dismissed at this time.

**Count 4:    Assault**

Plaintiff next attempts to bring a claim against Defendant Fry, who assaulted Plaintiff. Defendant Fry is an inmate in Menard, and was Plaintiff's cellmate at the time of the assault. However, private individuals are not state actors, and thus the activities of private individuals are not properly brought in a § 1983 complaint. These activities can be deemed to be "under color of state law" for purposes of §1983 where the private party has acted together with or has obtained significant aid from state officials, or his conduct is otherwise chargeable to the state; however, a private action is not converted into one under color of state law merely by some tenuous connection to the state action, and the issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself. *Pa. v. Bd. of Dir's of City Trusts of Philadelphia*, 353 U.S. 230, 231 (1957); *see also West v. Atkins*, 487 U.S. 42, 56 (1988); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 941 (1982); *Evans v. Newton*, 382 U.S. 296, 299 (1966).

There is no indication in Plaintiff's complaint that Defendant Fry was at the time, or has ever been, a state actor. Defendant Fry is an inmate at Menard, and thus is not an employee or actor of the state. Further, Plaintiff makes no allegations that Defendant Fry acted with or received significant aid from state officials. Because there is no indication that Defendant Fry was a state

actor or was acting under color of state law, he is not properly a party in this § 1983 suit. As a result, Defendant Fry is dismissed with prejudice.

**Count 5:     Eighth Amendment**

Plaintiff finally alleges that Defendants Monroe and Brown violated his right to be free from cruel and unusual punishment when they denied him access to a restroom during recreation periods. The Eighth Amendment to the United States Constitution, prohibiting cruel and unusual punishment, is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.*, (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny -- only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *See Rhodes,* 452 U.S. at 346; *see also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *See McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *See Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the

conditions of confinement "exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir. 1994). The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires that a prison official had a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 298; *McNeil*, 16 F.3d at 124. In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually wanted the prisoner to suffer the harm. *Jackson*, 955 F.2d at 22.

Plaintiff alleges that Defendants Monroe and Brown have denied him access to a restroom during recreation periods. However, Plaintiff has not described how often these denials happened,

or how long recreation periods last, so that the Court is unclear at this point whether these denials amount to an Eighth Amendment claim. Because of this, Plaintiff's claim for Eighth Amendment violations must be dismissed without prejudice. Should Plaintiff wish to raise this claim again, he is advised to include more information, so that the Court can adequately assess his claim.

**Unnamed Parties:**

Plaintiff has named John Doe Unknown Party in the caption of his complaint, but has failed to state claims against this individual or individuals. Although Plaintiff may use a fictitious name when he does not know the real name of a defendant, *see Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (holding that *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) impliedly recognized that plaintiffs can designate defendants by using fictitious names), Plaintiff must still state a claim or claims against the unknown individual(s) so that these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) (a "short and plain" statement of the claim suffices under Fed. R. Civ. P. 8 if it notifies the defendant of the principal events upon which the claims are based); *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) ("notice pleading requires the plaintiff to allege just enough to put the defendant on notice of facts providing a right to recovery"). Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

Plaintiff has named John Doe defendants, but has not named them elsewhere in his complaint. Thus, these defendants are not adequately put on notice of the charges against them. For this reason, the John Doe Unknown Party defendants are dismissed from this action without

prejudice.

**Disposition:**

**IT IS HEREBY ORDERED** that Defendant **FRY** is **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Defendants **JOHN DOE UNKNOWN PARTY** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **GAYLE, MONROE, BUTLER, FEINERMAN,** and **BROWN** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense

counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Frazier** for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to **United States Magistrate Judge Frazier** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 18, 2011**

                 *s/J. Phil Gilbert*
                 **United States District Judge**