IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN E. TAYLOR, JR., | ) |
|  | ) |
|     Plaintiff, | ) |
|  | ) |
| v. | )   Civil Case No. 11-104-JPG-PMF |
|  | ) |
| LISA GAYLE, et al., | ) |
|  | ) |
|     Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court are motions for summary judgment, supporting and opposing briefs, exhibits, a motion to strike, responses and supplemental briefs (Doc. Nos. 133, 134, 136, 137, 139, 158, 159, 163, 166, 167, 170, 171). Plaintiff John E. Taylor is proceeding on an Eighth Amendment claim, alleging that Lisa Gayle, Tina Monroe, Kimberly Butler, and Adrian Feinerman, M.D. deprived him of prompt access to prescribed pain medication in violation of his right to be free from cruel and unusual punishment (Doc. No. 76).

Summary judgment is appropriate when the full record shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Thomas v. H & R Block Eastern Enters*, 630 F.3d 659, 663 (7th Cir.2011); *see also* Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at

248. In deciding whether summary judgment should be granted, the Court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *Thomas,* 630 F.3d at 663; *see also Mobley v. Allstate Ins. Co.,* 531 F.3d 539, 545 (7th Cir.2008). However, the party opposing the motion may not rely on "mere allegation or denials of [the] pleading," *Anderson,* 477 U.S. at 256, but instead must present genuine, admissible evidence that shows a factual dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

Viewed in Taylor's favor, the material facts are summarized as follows.[1] Taylor has received medical care for a variety of painful physical ailments since he arrived at Menard Correctional Center in December, 2007. In February and March, 2009, correctional physicians were managing Taylor's pain with two medications, both of which were self-administered: Naproxen (taken as needed) and Neurontin (taken twice a day). While these medications did not eliminate Taylor's symptoms, they suppressed the intensity of his pain.

On February 26, 2009, Taylor took his medications at about 8:00 a.m. At some point, he initiated a housing change by asking to be reassigned to the prison's protective custody unit. As a result of Taylor's request, he was moved from one cell house to another. Taylor was escorted to the North cell house. Before he arrived, he delivered storage boxes containing his personal property (including his remaining supply of medication) to a different location known as "personal property". None of these defendants separated Taylor from his medication.

On February 26, 27, 28, and March 1, and 2, 2009, Taylor experienced pain and lost sleep. He made numerous attempts to gain access to his stored supply of medication. He spoke to defendant Lisa Gayle, a medical technician, when she entered the protective custody unit to

---

[1] The summary is derived from evidence and reasonable inferences drawn from evidence. Much of plaintiffs' argument is based on speculation rather than citation to specific materials in the record. As required by Rule 56, the discussion here focuses on factual positions that are supported. Fed. R. Civ. P. 56(c).

distribute medications to inmates. Taylor gave Gayle a short description of his situation, informed her that he was in pain, and offered his opinion that he would continue to suffer if he did not receive Neurontin. Gayle promised to help. Taylor subsequently formed the impression that Gales sent a message through a correctional officer and formed the impression that he would have to gain access to the medication stored in his personal property.

Taylor sent written correspondence to defendant Dr. Feinerman, asking him to authorize nurses to administer medication or help him retrieve medication from his personal property.

Taylor spoke with defendant Kimberly Butler, who was working as an intake counselor for the protective custody unit. Butler promised Taylor that she would make sure he received his medication or his property that day. When Taylor did not receive either, he sent Butler a written note, explaining that he had not received his medication as promised.

On February 28, 2009, Taylor spoke with a nurse, and formed the impression that he needed to get his medication out of his personal property.

Taylor spoke with Tina Monroe, a correctional officer, several times, explaining that he would be in pain without his medication. Monroe made statements which also lead Taylor to believe that he needed to retrieve his supply of medicine from his personal property. When Taylor asked Monroe to escort him to the location where his personal property was stored, she refused.[2] At some point, Monroe made a remark suggesting that she thought Taylor was playing games.

On March 2, 2009, Taylor prepared a written grievance complaining about pain and sleep deprivation. The grievance was delivered to Ms. Summers, a correctional counselor. That same

---

[2] A witness to this conversation suggests that correctional officers assigned to the protective custody unit do not leave the unit without obtaining permission from a supervisor (Doc. No. 159-1, p. 1).

evening, a nurse brought a dose of Neurontin to Taylor at his cell. Nurses continued to bring Neurontin to Taylor's cell twice daily, and this care was effective in controlling his pain. Taylor retrieved his remaining supply of Naproxin several days later, after officer Dobbs escorted a group of protective custody inmates to the location where personal property is stored.

On March 31, 2009, Taylor went to the health care unit to consult with Dr. Feinerman regarding a permit for a low bunk. When Taylor inquired about his earlier request for assistance with medication, Feinerman explained that Taylor had to get his medication supply out of his personal property.

### I. Motion to Strike

Taylor seeks an order striking the reply brief filed by defendant Feinerman, complaining that he did not receive his copy (Doc. No. 166). The motion is opposed (Doc. No. 167).

The Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Generally, motions to strike are disfavored; they are appropriate to remove "unnecessary clutter" from litigation. *Heller Financial Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). On review of the materials, the Court is satisfied that defendant Feinerman served his reply brief at least once. Fed. R. Civ. P. 5(b). This motion should be denied.

### II. Qualified Immunity

All defendants seek judgment in their favor, asserting that they are protected by the doctrine of qualified immunity. The doctrine protects government officials from liability for civil damages when their conduct does not clearly violate established constitutional rights of which a reasonable person would have known. *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) *citing Pearson v. Callahan*, 555 U.S. 223 (2009). On a qualified immunity claim, the

Court confronts two questions: (1) whether the evidence makes out a deprivation of a constitutional right; and (2) whether that right was clearly established at the time of the misconduct. *McAllister*, 615 F.3d at 881. When qualified immunity is raised, Taylor must show that the contours of his right – viewed in a particularized sense – were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Eighth Amendment claims are governed by the legal standard known as deliberate indifference, which requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834(1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). For purposes of a qualified immunity analysis, the focus will be on the subjective element of proof. The defendants point to G*utierrrez v. Peters*, 111 F.3d 1364 (7th Cir. 1997), where the deliberate indifference standard was not met when medical care was provided over a substantial period of time, with an isolated exception or two.

In February, 2009, three legal propositions applicable to Taylor's claim were well established: (1) medical negligence does not amount to deliberate indifference, (2) in order to qualify as deliberate indifference, treatment decisions must represent a substantial departure from accepted professional judgment, and (3) the doctrine of respondeat superior does not apply to §1983 actions. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008). Considered in combination, these legal rules would not suggest to a reasonable prison official that she violates the Eighth Amendment by failing to recognize a serious medical problem, failing to always provide the best medical care, or failing to correct a mistake made by someone else. In other words, Eighth Amendment jurisprudence does not create for correctional employees a "free-

floating obligation" to provide rescue services. *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009).

Applying these rules to defendant Monroe, a correctional officer, she did not respond with deliberate indifference when she informed Taylor that he needed to get his medication out of his personal property and then refused to escort Taylor to the location where personal property is stored. At worst, Monroe was insensitive or negligent when she failed to recognize the severity of Taylor's medical condition or when she failed to devise a quick and effective solution.

Applying these rules to defendant Gayle, a medical technician, she did not respond with deliberate indifference when she assessed Taylor's concerns and made an effort to acquire and share information that could help him resolve his problem with stored property. Although Taylor believes that Gayle might have done more to help, he has not shown that her response represents a substantial departure from accepted professional standards.

Applying these rules to defendant Butler, an intake counselor, she was not deliberately indifferent when she promised to provide Taylor with immediate assistance and then failed to keep her promise. At most, she was negligent in failing to do more to ensure that Taylor received quick access to his stored pain medications.

Applying these rules to defendant Feinerman, a medical doctor, Taylor has not shown that his response represents a substantial departure from accepted medical standards. At most, Feinerman was insensitive or negligent when he decided that Taylor should get his supply of medication from personal property and did not immediately provide a more effective solution, such as replacement medication obtained from another source.

The cases cited by Taylor have been reviewed. They do not clearly establish his right to quick access to stored medication, or similar conduct. The decision in *Walker v. Benjamin*, 293 F.3d 1030 (7th Cir 2002) is not helpful because the defendant in *Walker* intentionally refused to give pain medication prescribed after surgery. *Jones v. Simek*, 193 F.3d 485 (7th Cir. 1999) is not helpful because the deprivation of medical care persisted over five months. Taylor's problem was resolved after about 4 days.

In short, clearly established law in February, 2009, did not give any of these defendants fair warning that their particular responses to Taylor's difficulties gaining quick access to stored medication were unconstitutional. All defendants are entitled to qualified immunity.

## II.   Remaining Arguments

In view of the conclusions reached in the foregoing discussion, other arguments advanced by the defendants are not addressed in this Report and Recommendation.

## III.   Conclusion

IT IS RECOMMENDED that the motions be resolved as follows:

(1). Plaintiff John Taylor's motion to strike (Doc. No. 166) should be DENIED.

(2). The motion for summary judgment filed by defendants Kim Butler, Lisa Gayle, and Tina Monroe (Doc. No. 133) should be GRANTED.

(3). The motion for summary judgment filed by defendant Adrian Feinerman (Doc. No. 136) should be GRANTED.

IT IS FURTHER RECOMMENDED that judgment be entered in favor of all defendants and against the plaintiff. If these recommendations are adopted, no claims will remain for decision.

SUBMITTED:   **January 24, 2013**   .

s/Philip M. Frazier
**PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE**